# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

FARMERS INSURANCE EXCHANGE,
as Subrogee of Mr. Asif Ali,

      Plaintiff,

v.

UPONOR, INC.; and
UPONOR NORTH AMERICA, INC.,

      Defendants.

**COMPLAINT**

**(Jury Trial Demanded)**

COMES NOW, Plaintiff Farmers Insurance Exchange, as Subrogee of Asif Ali, by and through its undersigned counsel, and for its Complaint against Defendants Uponor, Inc. and Uponor North America, Inc., respectfully states to the Court and alleges the following:

## PARTIES

1. Plaintiff Farmers Insurance Exchange, as Subrogee of Mr. Asif Ali ("Farmers"), is an insurance exchange organized and existing under the laws of the State of California, with its principal place of business located in Los Angeles,

California. At all times relevant to the allegations contained herein, Farmers was authorized to conduct business in the State of Georgia.

2. At all times relevant to the allegations contained herein, Farmers provided insurance coverage to Asif Ali against losses arising from certain hazards to his property located at 5835 Read Road, Suwanee, Georgia (the "Ali House"). At all relevant times, including the date of the incidents giving rise to this action, this policy was in full force and effect.

3. Asif Ali (hereinafter "Mr. Ali") is a natural person, citizen, and resident of the State of Georgia, who at all times relevant to the allegations contained herein, owned the real property and improvements and personal property located at 5835 Read Road, Suwanee, Georgia.

4. Upon information and belief, Defendant Uponor, Inc. is an Illinois corporation with its principal place of business located at 5925 148th Street West, Apple Valley, Minnesota 55124. At all relevant times herein, Uponor, Inc. designed, manufactured, marketed, advertised, sold, and distributed Uponor Pex for use in residential water plumbing systems throughout the United States, including the Ali House.

5. Upon information and belief, Defendant Uponor North America, Inc. is a Delaware corporation with its principal place of business located at 5925 148th

2

Street West, Apple Valley, Minnesota 55124.  At all relevant times herein, Uponor North America, Inc. designed, manufactured, marketed, advertised, sold, and distributed Uponor Pex for use in residential water plumbing systems throughout the United States, including the Ali House.

6.    Defendants Uponor, Inc. and Uponor North America, Inc. shall be individually and collectively referred to herein as the "Uponor Defendants."

7.    Defendants Uponor, Inc. and Uponor North America, Inc. regularly conduct and solicit business, engage in a persistent course of conduct, and derive a substantial revenue from goods and services consumed in the State of Georgia.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states in that the citizenship of the Plaintiff is completely diverse from the citizenship of the Defendants.

9.    This Court has personal jurisdiction over the Defendants because, among other things, Defendants conduct substantial business in Georgia, have sufficient minimum contacts in Georgia, and intentionally avail themselves of the consumers and markets within Georgia through the promotion, advertising,

3

marketing, partnership agreements, supply agreements, sales and distribution of its products, including Uponor Pex.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, in that Plaintiff's subrogor resides in this district and a substantial part of the events and acts and omissions causing the loss that is the subject of this action occurred in Suwanee, Georgia.

## **FACTS**

11.    On May 29, 2023, a water loss incident occurred at the Ali House, which resulted in substantial damage to the Ali House and Mr. Ali's property (the "First Water Loss Incident").

12.    On May June 4, 2023, a second water loss incident occurred at the Ali House, which resulted in substantial damage to the Ali House and Mr. Ali's property (the "Second Water Loss Incident").

13.    The First Water Loss Incident and Second Water Loss Incident were both caused by a longitudinal fracture of Uponor PEX designed, manufactured, marketed, advertised, sold, and distributed by the Uponor Defendants.

14.    The Uponor PEX failed as a result of design and manufacturing defects.

4924-2848-5948, v. 1

15.     No evidence of improper installation, abuse, improper maintenance, or abnormal environmental conditions with the Uponor PEX was present with respect to both the First Water Loss Incident and Second Water Loss Incident.

16.     The failure of Uponor PEX with respect to both the First Water Loss Incident and Second Water Loss Incident was not consistent with improper installation, abuse, improper maintenance, or abnormal environmental conditions.

17.     The Uponor PEX in the Ali House is prematurely degrading, deteriorating and/or failing and suffers from micro-cracking.

18.     PEX stands for cross-linked polyethylene. PEX is a popular product because of its purported flexibility and ease of installation. PEX tubing is commonly either blue or red to make it readily identifiable once installed as either a cold (blue) or hot (red) water line.

19.     Unlike the Uponor Defendants, most PEX manufacturers add red or blue color pigment, along with antioxidant stabilizers, to the plastic formulation during the extrusion process (when the tubing is formed) and prior to cross-linking, which adds color evenly throughout the tubing wall.

20.     Antioxidant stabilizers are necessary to achieve the flexibility of PEX tubing, maintain ductility and protect against embrittlement.

5

4924-2848-5948, v. 1

21. Unlike other PEX manufacturers, the Uponor Defendants manufacture PEX tubing and then, after extrusion, add a blue or red coating to the tubing's outside surface. Coatings do not stick to PEX, so the Uponor Defendants patented a process to color coat their PEX tubing. The Uponor Defendants' patented process involves conveying the PEX tubing "through an oxidizing step in which at least the outer surface of the base pipe is oxidized, through a coating step in which a pre-polymer system is applied to the outer surface of the base pipe and through a curing step in which the pre-polymer is cured to form a layer of the pipe." Uponor Innovation AB, Fristad (SE), Appl. No. 12/572,683, Filed Oct. 2, 2009.

The below photograph depicts the difference between Uponor PEX, displaying the coating only on the tube's exterior surface, and other manufacturers' PEX, displaying the coating through the entire tube.

6



22.    This means that in order to get the coating to stick to the outside surface of the Uponor PEX tubing, the Uponor Defendants run the tubing through a furnace/flame treatment that oxidizes/burns the outside of the pipe. While the furnace/flame treatment improves adhesion qualities of polymers prior to the application of coatings and adhesives, it is an oxidation process that destroys the antioxidants from the outside of the Uponor PEX tubing, subjecting the tube to actual damage and premature failure in the form of, among other things, oxidative degradation, micro cracking, cracking, through-wall cracking, leaks and other property damage.

23.    Because the outside surface of Uponor PEX is depleted of antioxidants after the flame treatment, the outside surface prematurely becomes brittle and develops microcracks when the tubing is expanded during

7

installation. The embrittlement and microcracks constitute damage to the tubing and the cracks continue to grow and spread over time, eventually propagating through-wall, causing resultant leaks, significant damage to other property, loss of use of the plumbing system, and/or preventing the plumbing system from functioning as intended.

24. As of 2016, the Uponor Defendants represented that they produced over five billion feet of Uponor PEX and were responsible for approximately one-third of all PEX sold in the United States.

25. As of 2016, the Uponor Defendants did business with all of the top ten homebuilders in the United States and have exclusivity agreements with three of them.

26. As of 2016, among the top ten homebuilders, the Uponor Defendants claimed to have a 60% share of their housing starts.

27. The Uponor Defendants designed, manufactured, advertised/marketed, distributed, and/or sold Uponor PEX for use in water plumbing systems throughout the United States, including but not limited to the Ali House.

28. The Uponor Defendants designed, manufactured,

8

advertised/marketed, distributed, and/or sold Uponor PEX for use in potable water plumbing systems throughout the United States.

29.   The Uponor Defendants have repeatedly represented that consumers should trust them to provide the highest quality PEX tubing because the company has many years of industry experience and is an industry leader in the manufacture of PEX tubing.

30.   Until approximately 2021, the Uponor Defendants designed, manufactured, advertised/marketed, distributed, and/or sold the Uponor PEX at issue. Defendants' sales catalog advertised that, *inter alia,* its Uponor PEX was the highest quality PEX tubing available, and that its cross chemical bonding process gave it "superior characteristics."

31.   At the following link, https://www.uponor-usa.com/en/customer-support/faq#:~:text=Uponor%20PEX%20will%20not%20corrode,fit%20that%20type%20of%20connection, Defendants represented that Uponor PEX has "superior resistance to stress-crack corrosion" and will suffer "no micro-cracking during expansion."

32.   Contrary to these affirmative statements, as alleged herein, the Uponor PEX suffers from design and/or manufacturing defects causing damage.

9

4924-2848-5948, v. 1

33. Specifically, and as a result of such defects, the Uponor PEX is predisposed to premature oxidative failure, micro cracking, through wall cracking, leaks, loss of use, and other failure and damages. These defects cause the Uponor PEX to crack, fail to perform when put to their intended use, leak and reduce their normal useful life.

34. Defendants failed to disclose this material information to Mr. Ali.

35. Before designing, manufacturing, advertising/marketing, distributing and/or selling Uponor PEX, the Uponor Defendants failed to take appropriate steps to ensure that its products were safe for their intended use.

36. The Uponor Defendants knew or should have known that Uponor PEX was not suitable for use within water plumbing systems and that Uponor PEX suffered from the defects and caused damages as alleged herein.

37. Uponor PEX has caused damage to, and failure of, plumbing systems, including but not limited to the plumbing system at the Ali House.

38. Beginning in or around 2021, Defendants discontinued their manufacture, distribution and sale of red and blue Uponor PEX because of the defects with the product. However, the Uponor Defendants misrepresented that the product was being "suspended," not "discontinued," and instead concealed

4924-2848-5948, v. 1

that it discontinued the product due to the defects and premature failures and damages.

39.    Plaintiff has suffered an ascertainable loss as a result of the Uponor Defendants' acts, omissions and/or misrepresentations associated with Uponor PEX, including their misrepresentations and non-disclosures about the product defects and discontinuing/suspending the manufacture, distribution, and sale of the Uponor PEX.

40.    At no time did the Uponor Defendants or any of their agents, dealers or other representatives inform Mr. Ali of the Uponor Defendants' acts, omissions and/or misrepresentations related to defects in Uponor PEX.

41.    As a direct and proximate result of the damage caused by the First Water Loss Incident, Mr. Ali filed a property insurance claim with Plaintiff Farmers.  Farmers, in response to this property insurance claim and in accordance with its obligations under the policy, paid a total of Fifty-Eight Thousand Two Hundred Thirteen and 19/100 Dollars ($58,213.19) for damages caused by the First Water Loss Incident.

42.    As a direct and proximate result of the damage caused by the Second Water Loss Incident, Mr. Ali filed a property insurance claim with Plaintiff Farmers.  Farmers, in response to this property insurance claim and in

11

accordance with its obligations under the policy, paid a total of Sixty-One Thousand Three Hundred Sixty-Eight and 34/100 Dollars ($61,368.34) for damages caused by the Second Water Loss Incident.

43.    To the extent of its payments for damage to covered property under the applicable property insurance policy, Farmers is subrogated to all rights and claims Mr. Ali may have against the Uponor Defendants.

44.    The acts and omissions of the Uponor Defendants directly and proximately caused the damages sustained by Plaintiff Farmers.  Accordingly, the Uponor Defendants are liable to Plaintiff for the previously described damages.

45.    All conditions precedent to bringing the cause of action contained herein have been met and this Complaint has been filed prior to any and all applicable claims limitations periods, including the applicable statutes of limitations.

## COUNT I – STRICT PRODUCT LIABILITY

46.    Each and every preceding allegation consistent with this cause of action is realleged.

47.    At all times relevant to this Complaint, the Uponor Defendants was actively and substantially involved in the business of designing, testing, inspecting, assembling, manufacturing, selling, and distributing the subject Uponor PEX.

12

More specifically, the Uponor Defendants tested, inspected, assembled, manufactured, sold, distributed and placed into the stream of commerce the subject Uponor PEX at issues in this case.

48.    The subject Uponor PEX was not modified, changed, altered or abused from the time it was purchased until the time of the First Water Loss Incident and Second Water Loss Incident.  Rather, the subject Uponor PEX was used in its intended and foreseeable manners.

49.    As a product designer and manufacturer, under O.C.G.A § 51-1-11 and other applicable law, the Uponor Defendants are strictly liable for design defects in their product because the risks inherent in the subject Uponor PEX design outweigh its utility, particularly given the availability of feasible, safer alternative designs that would not impair the Uponor PEX's functionality.  This, under Georgia law, the subject Uponor PEX was defective in its design.

50.    More specifically, the Uponor Defendants knew at all times that as a manufacturer, designer, marketer and seller of new consumer products, the subject Uponor PEX had to be designed, tested, manufactured and marketed so as to minimize risks versus utilities, and that with this product, there was grave risk of harm to the user if the Uponor Defendants failed to implement sufficient and reliable design systems and safeguards. The subject Uponor PEX was and is

13

defective by design because the design chosen by the Uponor Defendants allows that very danger to occur, and lacks safeguards to protect consumers from harm.

51.    When the Uponor Defendants designed the subject Uponor PEX, it knew, or should have known through its own testing and/or studies, that the product could fail, which could increase the risk of injury caused by a water loss incident such as the ones that occurred at the Ali House.

52.    The Uponor Defendants designed, tested, inspected, manufactured, sold and/or distributed into the stream of commerce the subject Uponor PEX in a dangerous and defective condition, which catastrophically failed due to a defect.

53.    The Plaintiff's claims are based on characteristics of the subject Uponor PEX that can be eliminated without substantially compromising its usefulness or desirability.  The Uponor Defendants failed to warn the public of those dangers, and thus the product was additionally defective in its design because it lacked adequate warnings to allow consumers to make informed decisions about the purchase and use of the product.

54.    The Uponor Defendants are strictly liable under Georgia products liability law for designing the subject Uponor PEX without defects which could result in a water loss incident because the risks inherent in the design of the subject Uponor PEX outweighed any utility of the chosen design, thereby rendering the

14

Uponor PEX defective, unreasonably dangerous and not reasonably suited to the use for which it was intended.

55.    The Uponor Defendants are strictly liable to the Plaintiff because, among other things, they failed to use available, feasible, and safer designs or manufacturing processes that would reduce the risk of failure and the danger posed to users without impairing the subject Uponor PEX's functionality.

56.    At all relevant times, the subject Uponor PEX was defective under Georgia law because the risks inherent in its design outweigh the design's utility, particularly given the availability of feasible, safer alternative designs and design/manufacturing processes that would not impair the subject Uponor PEX's functionality and because the subject Uponor PEX lacks sufficient warnings of its dangers.

57.    The Uponor Defendants also marketed the subject Uponor PEX in a defective manner in that the Uponor Defendants failed to effectively warn or inform customers of the unreasonably dangerous properties of the subject Uponor PEX and methods by which consumers, such as Mr. Ali, could guard and/or mitigate such dangers, or such that the purchaser could make a fully informed decision about purchasing and using the Uponor PEX product.

4924-2848-5948, v. 1

58.     Upon information and belief but without the benefit of fact discovery, and pleading in the alternative as specifically allowed by O.C.G.A. § 9-11-8(e), as a direct and proximate result of the defective design, manufacture and/or warning of the subject Uponor PEX, for with the Uponor Defendants are liable, the Plaintiff suffered damages in an amount in excess of the Court's jurisdictional minimum.

59.     The Uponor Defendants are liable for causing or contributing to the property damage and all damages that are recoverable under Georgia law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence adduced at trial.

## COUNT II – NEGLIGENCE

60.     Each and every preceding allegation consistent with this cause of action is realleged.

61.     As a designer and manufacturer of Uponor PEX, the Uponor Defendants have a duty of reasonable care to design, manufacture, market, and sell non-defective Uponor PEX that is reasonably safe for its intended uses.  The Uponor Defendants also have a duty to adequately warn of dangers posed by the product's design.  These duties applied to the subject Uponor PEX in this case.

62.     The Uponor Defendants knew, or in the exercise of ordinary care should have known, of the means of designing, manufacturing, and marketing the

16

subject Uponor PEX such that the type of incident and resulting injuries and damages as described herein would be prevented.  The Uponor Defendants had actual knowledge of the means of designing Uponor PEX that would not be inadequate and dangerous.  Notwithstanding this knowledge, the Uponor Defendants failed to adequately design and/or manufacture the subject Uponor PEX.

63.    The Uponor Defendants breached their duties of reasonable care by designing and/or manufacturing a dangerous and defective Uponor PEX that was unsafe and not free of defects which would make a water loss incident unavoidable in reasonably foreseeable events and by failing to adequately warn of dangers known to the Uponor Defendants.

64.    The Uponor Defendants are liable for their negligence because, among other things, they failed to use available, feasible, and safer designs or manufacturing processes that would reduce the risk of failure and the danger posed to users without impairing the subject Uponor PEX's functionality.

65.    The Uponor Defendants owed a duty and continuing duty to provide to the public, including the Plaintiff and Plaintiff's subrogors, with sufficient warnings to protect the interests of those reasonably foreseeable users or

17

consumers who would, based on their own reasonable assessments of the risks and benefits, decline product use or consumption.

66.    The Uponor Defendants breached their duties by failing to provide warnings sufficient to provide a complete disclosure of the existence and extent of the risks involved with using the subject Uponor PEX.

67.    Upon information and belief but without the benefit of fact discovery, and pleading in the alternative as specifically allowed by O.C.G.A. § 9-11-8(e), as a direct and proximate result of the Uponor Defendants' negligent breaches of its duties, Plaintiff suffered damages in an amount in excess of the jurisdictional minimum required to confer jurisdiction in this Court.

68.    The Uponor Defendants are liable for their negligence in causing or contributing to the property damage and all damages that are recoverable by Plaintiff under Georgia law, in a total amount to be determined by the enlightened conscience of the jury based upon the evidence at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays:

(a)    That Summons issue requiring the presently-named Defendants to appear and Answer this Complaint as provided by law;

(b)    That Plaintiff has a trial by jury;

18

(c)     That Plaintiff recovers from Defendants all damages that are compensable under Georgia law that are sufficient to compensate fully and fairly for all losses proximately caused by the tortious acts and omissions of Defendants, to be determined by the enlightened conscience of the jury based upon the evidence adduced at trial;

(d)     That all costs be taxed against Defendants; and

(e)     For such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted this 29th day of April, 2025.

By: */s/ Jefferson M. Starr*
JEFFERSON M. STARR
Georgia Bar No.:  992352
COLEMAN TALLEY LLP
3344 Peachtree Road, NE
Suite 1950
Atlanta, GA 30326
Telephone: 678-987-0932
Email: jeff.starr@colemantalley.com
*Counsel for Plaintiff Farmers Ins. Exchange, as Subrogee of Asif Ali*

19

4924-2848-5948, v. 1

## **CERTIFICATION OF COMPLIANCE**

The Undersigned Counsel hereby certifies that the foregoing has been prepared using Times New Roman 14-Point Font, as approved in LR 5.1C.

Respectfully submitted this 29th day of April, 2025.

By: */s/ Jefferson M. Starr*
    JEFFERSON M. STARR
    Georgia Bar No.:  992352
    COLEMAN TALLEY LLP
    3344 Peachtree Road, NE
    Suite 1950
    Atlanta, GA 30326
    Telephone: 678-987-0932
    Email: jeff.starr@colemantalley.com
    *Counsel for Plaintiff Farmers Ins. Exchange, as*
    *Subrogee of Asif Ali*

4924-2848-5948, v. 1